UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SAMUEL FRANKLIN CLAYTON, <br><br>  Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | Case No.: 4:18-cv-01928-LCB |

## MEMORANDUM OPINION AND ORDER

On November 21, 2018, the Plaintiff Samuel Clayton filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer to the complaint on March 1, 2019. (Doc. 6). The Plaintiff filed a brief in support of his position on April 8, 2019, (Doc. 9) and the Commissioner filed a brief in support of the decision on May 13, 2019 (Doc. 10). The Plaintiff also filed a reply brief on May 14, 2019 (Doc. 11). Therefore, this issue is ripe for review. For the following reasons stated below, the final decision of the Commissioner is affirmed.

### I. BACKGROUND

1

The Plaintiff protectively filed for a period of disability and disability insurance benefits on January 19, 2016 (R. 10). He alleged that his disability began on January 18, 2016. (*Id*). His claim for benefits was denied on April 7, 2016, and the Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge (ALJ) on April 20, 2016. (*Id*). The Plaintiff appeared before ALJ Renee Blackmon Hagler in a video hearing on October 11, 2017. (*Id*). The Plaintiff testified at the hearing and was questioned by his attorney and the ALJ. (R. 37, 49). Additionally, vocational expert Robert Moseley testified at the hearing. (R. 52). The ALJ issued her opinion on January 30, 2018 (R. 17). When she issued her opinion, the ALJ used the five-step evaluation process promulgated by the Social Security Administration to determine whether an individual is disabled. (R. 11). The ALJ made the following determinations:

1. The Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. (R. 12).

2. The Plaintiff has not engaged in substantial gainful activity since January 18, 2016, the alleged onset date of the disability. (R. 13).

3. The Plaintiff has the following severe impairments: morbid obesity, gout, and mild asthma. (*Id*).

4. The Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.).

5. The Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c). He can sit for six hours, stand for six hours, and walk for six hours each in an eight-hour workday.

> He can occasionally climb ramps and stairs and stoop, kneel, crouch, and crawl. He can never climb ladders, ropes or scaffolds. He can frequently be exposed to dust, odors, fumes, and pulmonary irritants. (R. 14).

6. The Plaintiff has the past relevant work as a heavy truck driver, sales route driver, and production line welder. These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity. (R. 16).

7. The Plaintiff has not been under a disability, as defined in the Social Security Act, from January 18, 2016, through the date of this decision. (R. 17).

After the ALJ denied his claim, the Plaintiff requested an appeal to the Appeals Council and was denied on September 17, 2018 (R. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The Plaintiff filed this action on November 18, 2018. (Doc. 1).

## II. DISCUSSION

The Social Security Administration (SSA) is authorized to pay Supplemental Security Insurance (SSI) and disability insurance to claimants that have a disability. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018) (citing *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003)). Title II of the Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a

3

continuous period of not less than 12 months." *Id.* at 1358-59. (citing 42 U.S.C. §§ 423 (d)(1)(A)).

### A. Standard of Review

The Court reviews "de novo the legal principles upon which the ALJ relied, but [is] limited to assessing whether the ALJ's resulting decision is supported by substantial evidence." *Henry*, 802 F.3d at 1266-67. "Substantial evidence is more than a scintilla and is such relevant evidence that a reasonable person would support its conclusion." *Winshel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 631 F.3d 1155, 1158 (11th Cir. 2004)). The Court does not "decide facts anew, mak[e] credibility determinations, or reweigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Court instead "must scrutinize the record as a whole in determining whether the ALJ reached a reasonable decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B. Five Step Sequential Evaluation

In order to determine if a claimant has a disability, the SSA regulations mandate that an ALJ must follow a five-step sequential evaluation while evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520; 416.920. Pursuant to the regulations, the ALJ must proceed with his analysis as follows:

1. Is the claimant engaged in substantial gainful activity? If "yes" the claimant is not disabled and the analysis ends here. If the answer is "no," proceed to the next step of the analysis. 20 C.F.R. § 404.1520.

2. Does the claimant have a medically determinable physical or mental impairment or combination of impairments that meets the duration requirements of 20 C.F.R. § 404.1509? If "no," the claimant is not disabled. If "yes," proceed to the next step of the analysis. *Id.*

3. Does the claimant have an impairment that equals a listed impairment in 20 C.F.R. § 404, Subpart P Appendix 1 and meets the durational requirements of 20 C.F.R. § 404.1509? If "yes" the claimant is disabled. If "no," proceed to the next step of the analysis. *Id.*

4. Does the claimant have the residual functional capacity (RFC) to return to past relevant work? If "yes" the claimant is not disabled. If no, proceed to the final step of the analysis. *Id.*

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If "no," the claimant is disabled. If "yes," the claimant is not disabled. *Id.*

Initially, the claimant bears the burden of proof regarding the first four steps of the above analysis. *Washington,* 906 F.3d at 1359. The claimant carries a particularly heavy burden when showing why he or she cannot engage in past relevant work. *Id.* After the fourth step, the burden then shifts to the Commissioner to determine if there are jobs in the national economy that the claimant can perform. *Id.* However, while the burden shifts to the Commissioner at step five, the burden ultimately falls to the claimant to show a disability exists. *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

**C. The Plaintiff's Contentions**

The Plaintiff claims that the ALJ erred in several ways when finding that he was not disabled. He argues that the ALJ failed to: (1) consider the Plaintiff's testimony concerning the side effects of his medication; (2) consider the Plaintiff's morbid obesity pursuant to SSR 02-01; (3) and properly determine whether the Plaintiff could perform his past relevant work. (Doc. 9 at 11, 13, 15). Because of these failures, he claims that the ALJ's decision is not supported by substantial evidence. (*Id*. at 22).

1. **The ALJ did not improperly consider the side effects of the Plaintiff's medication.**

First, the Plaintiff claims that the ALJ failed to consider the side effects of medications that treat his severe impairments. (*Id*. at 11). During the hearing, the Plaintiff testified that he experiences "[n]ausea, little bit, little drowsiness," when he takes medicine for his knee pain. (R. 44). The Plaintiff claims that the ALJ should have considered or discussed "how the nausea and drowsiness affected [his] ability to work." (Doc. 9 at 10). The ALJ noted in her opinion that the Plaintiff's medicine caused nausea and drowsiness but did not discuss them further. (R. 15).

When considering a claimant's subjective symptoms, an ALJ must also consider the side effects of his or her medication in some circumstances. *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). The Court in *Walker* compared the following scenarios in which an ALJ must discuss a medication's side

6

effects. *Id*. For example, the ALJ was reversed in *Cowart v. Schweiker* because he did not make any findings about the side effects of a *pro se* claimant's medications. 662 F.2d 731, 737 (11th Cir. 1981). However, in *Cherry v. Heckler*, the ALJ's decision stood because the claimant did not allege that the side effects of her medications "contributed to her disability." 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985). Ultimately, a "claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker*, 404 F. App'x. at 366 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)).

Substantial evidence supports the ALJ's treatment of the side effects of the Plaintiff's medication. While the Plaintiff did mention that his medication caused some nausea and drowsiness, he did not present any evidence that the nausea or drowsiness contributed to his disability. Further, the Plaintiff's medical record did not support that side effects of his medicine were disabling. Accordingly, the Plaintiff did not meet his burden of showing his medication side effects prevented him from working. *See Walker*, 404 F. App'x. at 366. Therefore, the ALJ did not err regarding this claim.

**2. The ALJ did properly considered the Plaintiff's morbid obesity.**

The Plaintiff also claimed that the ALJ erred when considering the impact of his morbid obesity on his ability to work. (Doc. 9 at 13). He argues that the ALJ did

7

not follow SSR 02-01 in her ruling and did not consider that his weight increased from 300 pounds to 352 pounds. (*Id*. at 13-15). The ALJ discussed the Plaintiff's obesity in her opinion before determining his residual functional capacity (RFC).

SSR 02-1p guides how an ALJ assesses a claimant's obesity in relation to his alleged disability. 2002 WL 31026506. An ALJ will find that obesity is a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities." *Id*. at 57862. Further, when determining a claimant's RFC, an ALJ must consider the impact his obesity has on his ability to perform functions such as "sitting, standing, walking, [and] lifting." *Id*.

The ALJ's consideration of the Plaintiff's morbid obesity is supported by substantial evidence. In her opinion, the ALJ found that the Plaintiff's obesity was a severe impairment and considered the functional limitations related to it pursuant to SSR 02-1 in her RFC determination. (R. 13, 16). While the ALJ noted that the Plaintiff weighed 300 pounds in her opinion, she considered the entire record when making her RFC conclusions. (R. 14). The Plaintiff's record does not reflect his additional weight gain would have changed his RFC. For example, the Plaintiff's medical records after December 2016 only reflected mild and moderate reduced range of motion and generally normal respiratory findings. As these limitations were reflected in the ALJ's RFC determination, substantial evidence supports the ALJ's

treatment of the Plaintiff's morbid obesity. Accordingly, the ALJ did not err regarding this claim.

### 3. The ALJ did not err at when determining that the Plaintiff could return to past relevant work.

The Plaintiff contends that the ALJ's finding that he could return to past relevant work is not supported by substantial evidence.[1] (Doc. 9 at 15). He argues that the ALJ did not consider the duties of the Plaintiff's past work and did not determine the physical requirements of his past jobs. (*Id*. at 16, 18). He also claims that the Vocational Expert's testimony does not constitute substantial evidence that he can perform his former jobs. (*Id*. at 15). The ALJ relied on Vocational Expert Robert Moseley's testimony that the Plaintiff could still work as truck driver, sales route driver, and a production line welder. (R. 17).

While the Plaintiff claims that an ALJ must determine the physical requirements of his previous work, the regulations do not require this exact formulation. Instead, "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20 C.F.R. 404.1560(b)(2).

---

[1] The Plaintiff also argued that the ALJ did not properly consider his obesity when deciding he could not return to his previous positions. However, as the Court previously found the ALJ did not err regarding this issue, it was not included in this discussion.

An ALJ's hypothetical question to a Vocational Expert must include all the claimant's severe impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). If a question posed to the expert does not include all severe impairments, it will not be considered substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). While a hypothetical question must reference a claimant's severe impairments, an "ALJ [is] not required to include findings in the hypothetical that the ALJ had property rejected as unsupported." *Crawford*, 363 F.3d at 1161 (11th Cir. 2004).

The ALJ's reliance on the Vocational Expert's testimony is supported by substantial evidence. During the hearing, the ALJ asked Mr. Moseley about the Plaintiff's past relevant work and included limitations related to his severe impairments in her hypothetical question. For example, her question included restrictions related to lifting, sitting, walking, pushing, and pulling. (R. 53). She also included limitations related to inhaling any irritants that could harm the Plaintiff's lungs. (*Id.*). As the ALJ's hypothetical question referenced all the Plaintiff's severe impairments, the Vocational Expert's testimony constituted substantial evidence. Therefore, the ALJ did not err when relying on Mr. Moseley's findings.

### 4. The ALJ's decision was based on substantial evidence.

Finally, the Plaintiff claims that because the ALJ erred deciding these three issues, her decision is not supported by substantial evidence. As the above analysis

discusses, the ALJ did not err regarding the Plaintiff's claims. Additionally, after reviewing the whole record, substantial evidence supports the ALJ's determination that the Plaintiff was not disabled. *See Bloodsworth*, 703 F.2d at 1239. For example, the Plaintiff's medical records reflect normal respiratory findings and generally a mildly reduced range of motion. *See* (R. 382, 394, 402, 416). Further, when examined in March 2016, the physician noted that the Plaintiff walked normally, sat comfortably, and was "able to get on and off the table without difficulty." (R. 330-31). Therefore, substantial evidence supports the ALJ's finding the Plaintiff is not disabled.

## III. CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, it is **ORDERED** that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

**DONE** and **ORDERED** this March 29, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE